751 So.2d 1206 (1999)
Sam WALTERS and Sam Walters Amusement, Appellant,
v.
The CITY OF GREENVILLE, The City Council of Greenville, Mississippi, Its Governing Authority, and The Honorable Paul C. Artman, Mayor, City of Greenville, State of Mississippi, Appellees.
No. 1998-CC-01243-COA.
Court of Appeals of Mississippi.
November 16, 1999.
*1207 John H. Daniels, III, Greenville, Attorney for Appellant.
G. Kenner Ellis, Jr., Greenville, Attorney for Appellees.
BEFORE SOUTHWICK, P.J., LEE, AND PAYNE, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY
¶ 1. This is an appeal from the Washington County Circuit Court's affirmance of the City of Greenville's amendment of a zoning ordinance. The amendment at issue changed the zone containing Walters's business from a permitted use to a conditional *1208 use zone. Feeling aggrieved, Walters filed a bill of exception with Mayor Artman of Greenville, filed thereafter to the Washington County Circuit Court, then filed this appeal.

FACTS
¶ 2. Sam Walters ("Walters") owns various parcels of property in Greenville, Mississippi, including the Nelson Street area at issue in this appeal. Walters uses the Nelson Street property and other property he owns in the Greenville area for lounges, taverns, pool rooms, game rooms, video arcades, or like businesses which have historically been "permitted" uses under the Greenville Code. However, due to complaints by persons in abutting residential neighborhoods and testimony from a police officer who patrolled the Nelson Street area, the Greenville Planning Commission recommended this and other like areas be changed from "permitted" use areas to "conditional" use areas, agreeing with appellees such businesses attract drug dealers and encourage gambling, loud music, and crime and cause serious loitering and parking problems.
¶ 3. On March 28, 1997, appellees (hereinafter "City") published in the Delta Democrat Times newspaper a notice of public hearing to consider amendments to the city zoning ordinances. On April 24, 1997, Walters voiced an objection at a Greenville Planning Commission hearing called for that purpose. The Planning Commission, however, unanimously approved the amendment, and the City Council unanimously approved the same on May 6, 1997.
¶ 4. Walters filed a bill of exception, which Mayor Artman executed on May 16, 1997. Walters then appealed to the Circuit Court of Washington County, Mississippi, alleging he suffered a substantial loss in the character, use, permitted use, intended use, and value of his real property, ultimately arguing the change in the ordinance constituted a taking of his property.

ARGUMENT AND DISCUSSION OF THE LAW

STANDARD OF REVIEW
¶ 5. Walters raises one issue in this appeal: whether the Washington County Circuit Court abused its discretion in affirming the ordinance which changed the property in question from a permitted use zone to a conditional use zone.
¶ 6. Mississippi courts have clearly established evaluative standards applicable to the case sub judice. "Our law is well settled that before a zoning board reclassifies property from one zone to another, there must be proof either (1) that there was a mistake in the original zoning, or (2)(a) that the character of the neighborhood has changed to such an extent as to justify reclassification and (b) that there was a public need for rezoning. Both zoning and rezoning are legislative rather than judicial matters." Burdine v. City of Greenville, Mississippi, 98-CC-00664-COA, ___ So.2d ___ (¶ 3), 1999 WL 367187 (Miss. Ct.App. June 8, 1999).
¶ 7. "[C]ourts should not constitute themselves zoning boards. We have amplified this statement with the observation that the classification of property for zoning purposes is essentially a legislative rather than a judicial responsibility of the city board ... and courts [should] set aside only if the invalidity [is] clear." Broadacres, Inc. v. City of Hattiesburg, 489 So.2d 501, 504 (Miss.1986). "[Z]oning is a legislative matter and the courts will not interfere or substitute their judgment, but will limit their reviews as to whether the zoning was reasonable, arbitrary, discretionary, confiscatory, or an abuse of discretion." Blacklidge v. City of Gulfport, 223 So.2d 530, 533 (Miss.1969).
¶ 8. "In examining a zoning order issued by a city council, circuit courts sit as appellate courts with a restricted scope of judicial review. Those attacking a zoning order must show that it is `arbitrary, *1209 capricious, discriminatory, or beyond the legal authority of the city board, or unsupported by substantial evidence.'" McWaters v. City of Biloxi, 591 So.2d 824, 827 (Miss.1991) (quoting Ridgewood Land Co. v. Moore, 222 So.2d 378, 379 (Miss.1969)).
¶ 9. "The judicial department of the government of this state has no authority to interdict either zoning or rezoning decisions which may be said `fairly debatable'." Luter v. Hammon, 529 So.2d 625, 628 (Miss.1988). "The zoning decision of a local governing body which appears to be `fairly debatable' will not be disturbed on appeal, and will be set aside only if it clearly appears the decision is arbitrary, capricious, discriminatory, illegal, or is not supported by substantial evidence." City of Biloxi v. Hilbert, 597 So.2d 1276, 1280 (Miss.1992). "`Fairly debatable' is the antithesis of arbitrary and capricious. If a decision is one which could be considered `fairly debatable,' then it could not be considered arbitrary or capricious." Mathis v. City of Greenville, 724 So.2d 1109, 1112 (Miss.Ct.App.1998).
¶ 10. Applying these standards to the case sub judice, we must affirm the decision of the Washington County Circuit Court.

ANALYSIS OF THE ISSUE PRESENTED

I. WHETHER THE CIRCUIT COURT OF WASHINGTON COUNTY, MISSISSIPPI, ABUSED ITS DISCRETION AND COMMITTED MANIFEST ERROR AS A MATTER OF FACT AND LAW IN AFFIRMING THE ORDINANCE OF THE CITY OF GREENVILLE AMENDING XVII, C-3, CENTRAL BUSINESS DISTRICT, ESTABLISHING BARS, VIDEO ARCADE TAVERNS, AND LOUNGES AS CONDITIONAL RATHER THAN PERMITTED USES.
¶ 11. In this case only one issue is stated. However, in reviewing the law necessary to reach a justiciable conclusion, several sub-issues surface: it is necessary for us to distinguish between a permitted use and a conditional use, to discuss eminent domain and taking of property, to conduct a balancing test weighing Walters's individual interest against the public interest, and to determine whether the amendment is arbitrary and capricious.
¶ 12. First, we look to the difference between a permitted use and a conditional use, as the controversy in the zoning amendment lies with this differentiation. In 83 Am.Jur. Zoning and Planning § 213 (1992) the author describes permitted uses: "Some zoning ordinances contain a general provision or cumulative provisions permitting kinds of buildings and uses thereof in less restricted zones that are expressly permitted in the more restricted zones." The Greenville Code states, "Permitted uses: The following uses are permitted in any [Waterfront] district: ... (3) Restaurants; ... (6) Taverns; (7) Concessions; (8) Rentals," Greenville, MS., Code art. XXX, § 3001 (1994). According to this section of the Greenville Code, Walters's business was classified as a permitted use prior to the zoning amendment.
¶ 13. In 83 Am.Jur.2d Zoning and Planning § 218 (1992) conditional zoning is described: "Conditional zoning is a device employed to bring some flexibility of use to an otherwise rigid system of control. It is generally used to describe a zoning change granted to an owner subject to condition as generally not applicable to land similarly zoned. `Conditional zoning' involves ordinances which provide either that rezoning becomes effective immediately with an automatic repealer if the specified conditions are not met, or that the zoning becomes effective only upon conditions' being met within a certain time."
¶ 14. As stated in the transcript of the May 6, 1997 Greenville City Council meeting, the degree to which conditional uses can be limited lies in the discretion of the Planning Commission. In the present case, the City wished to change the property at issue from a permitted use area to *1210 a conditional use area in efforts to curb criminal and nuisance problems associated with operation of businesses which include taverns, bars and nightclubs. In this Court's review of notes from city meetings on the matter, it appears changing the area from permitted to conditional use would be a reasonable measure to keep the businesses at issue from falling into the hands of irresponsible proprietors who could further exacerbate the already-existent problems in the surrounding residential neighborhoods.
¶ 15. In Board of Aldermen of Town of Bay Springs v. Jenkins, 423 So.2d 1323, 1328 (Miss.1982) the court said, "[W]e have often stated that before property is reclassified from one zone to another, there must be proof either (1) that there was a mistake in the original zoning, or (2) the character of the neighborhood has changed to such an extent as to justify rezoning and that public need exists for rezoning." See also Burdine v. City of Greenville, 98-CC-00664-COA, ___ So.2d ___ (¶ 3), 1999 WL 367187 (Miss. Ct.App. June 8, 1999); City of New Albany v. Ray, 417 So.2d 550, 552 (Miss.1982).
¶ 16. As recorded in the trial transcript, different persons, including a police officer who regularly patrols the area in question, testified the character of the neighborhood at issue had deteriorated to the point of fostering crime and troublesome activities. The justification for the proposed amendment was that the zoning change would help curb crime and trouble by allowing the planning commission to evaluate future renters or buyers of these businesses prior to their lease or purchase. This change does not place handcuffs on the present owners; it is a simple remedy aimed at keeping irresponsible persons from being allowed to operate businesses having a history of attracting persons apt to cause trouble or persons with criminal natures.
¶ 17. A change in zoning from permitted to conditional does not disqualify a future buyer or lessor of property from operating the business in the same manner as the previous operator. The only difference is the would-be purchaser must get prior approval from the planning commission to operate the business, as opposed to being able on a permissive use to operate the business as a matter of course without gaining such approval. Walters's argument on this point is without merit.
¶ 18. The next point with which we must contend regards eminent domain. Walters argues the change in zoning ordinance from permitted to conditional is a taking without just compensation, such that the restriction would devoid him as the property owner of any and all value in his property.
¶ 19. Mississippi case law gives no distinct definition of a "taking" of property; therefore, we turn to federal case law which has given such definition. "[T]here is a taking of property when government action directly interferes with or substantially disturbs the owner's use and enjoyment of the property." Brothers v. U.S., 594 F.2d 740, 741-42 (1979). "A taking is effected if the application of a zoning law denies a property owner of economically viable use of his land. This can consist of preventing the best use of the land or extinguishing a fundamental attribute of ownership." Vari-Build, Inc. v. City of Reno, 596 F.Supp. 673, 679 (1984).
¶ 20. Applying either of these definitions, a taking has not occurred in the present case. Walters in no way has been deprived of the use and enjoyment of his property, nor has he been denied economic benefits of his land. He still is able, just as he was before, to operate his businesses on his property. A mere speculation as to difficulty in selling or renting the property in the future in no way amounts to a taking.
¶ 21. "The fundamental law governing the taking of lands under eminent domain in Mississippi is Article 3, § 17 of the Mississippi Constitution which mandates that `private property shall not be taken or damaged for public use, except on due *1211 compensation being first made to the owner or owners thereof....'" Dear v. Madison County Through the Madison County Bd. of Supervisors, 649 So.2d 1260, 1261 (Miss.1995).
¶ 22. In the present case, Walters's private property is not being taken or damaged for public use, nor does the simple change in zoning from a permissive use area to a conditional use area place a burden on Walters such that he is due compensation.
¶ 23. In Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 147, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), the United States Supreme Court stated, "[Z]oning does not constitute a `taking.' While zoning at times reduces individual property values, the burden is shared relatively evenly and it is reasonable to conclude that on the whole an individual who is harmed by one aspect of the zoning will be benefitted by another."
¶ 24. The rule set forth in Penn Central precludes Walters from any remedy in this matter. Walters has not submitted evidence that his property values were reduced, nor that he has directly suffered from the change in zoning. Contrarily, weighing the harm against the benefit, Walters's situation could possibly even improve due to this change, since the proposed reduction in crime would make Walters's properties more economically attractive to future buyers or renters.
¶ 25. From the cases described herein, it is evident the proposed zoning ordinance in no way mirrors a taking, nor is Walters due any remedy as this argument is without merit.
¶ 26. Case law on this issue dictates another initial step one must take regarding zoning changes: evaluate the public interest relative to individual hardship or loss.
¶ 27. "In determining the validity of zoning regulations, the public interest must be weighed against the right of individual owners, and while the effect of a regulation on the land values is not controlling, it is a proper element to be considered, since no basis for the exercise of the zoning power exists if the public gain is small compared with individual hardships and loss." City of Jackson v. Bridges, 243 Miss. 646, 654, 139 So.2d 660, 663-64 (1962) (citing 101 C.J.S. Zoning § 37, p. 744-45 (1958)).
¶ 28. A balancing test weighing the public interest with the individual's interest reveals a much greater public interest is served by the zoning amendment at issue in this case compared to harm possibly that would befall the individual business owners.
¶ 29. The interest of the public is at the heart of the City's argument. As stated in the transcript for the May 6, 1997 City Council meeting on the matter, Officer Monistere of the Greenville Police Department clearly stated crime is a serious problem in these neighborhoods. Officer Monistere further described how residents in surrounding neighborhoods told Officer Monistere they lived in fear.
¶ 30. Offenses including drug selling, gambling, loud music, assaults and homicides all contribute to the increased crime rate in areas containing game rooms and nightclubs within residential neighborhoods, such as the Nelson Street area at issue in the present case. Therefore, there is a strong public interest attached to this amendment.
¶ 31. Walters's individual interest in his property is described in his briefs and statements on record from the May 1997 council meeting on this matter. At that meeting Walters stated he foresaw much trouble trying to sell property to a new owner should the proposed restriction require approval by the planning commission. Walters further claimed a change from permitted to conditional use of his property devoids him of value in his property to the point it is an outright taking as to render it completely useless. As stated before, this argument is unsubstantiated in *1212 the record, and Walters cites no proof such would be the case; he merely speculates it might be "difficult" to sell or rent his land.
¶ 32. In the present case, Walters cites no figures to show how his property would be diminished in value or even how to calculate such diminution. Walters only cites two United States Supreme Court cases and one Mississippi Supreme Court case that all state generally a balancing test must be done to evaluate the public interest against the individual owners' interests. We conducted such a test before and that test proved the public interest far outweighs the individual interests. Accordingly, this argument, too, is without merit.
¶ 33. The final point regarding the validity of the ordinance at issue is whether or not the amendment is arbitrary and capricious, as Walters contends.
¶ 34. "An act is arbitrary when it is not done according to reason or judgment, but depending on the will alone. `Capricious' [is] defined as any act done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles." Burks v. Amite County Sch. Dist., 708 So.2d 1366, 1370 (Miss.1998).
¶ 35. There is no evidence in the briefs or in the record to show the City acted in such a manner toward Walters or any of the other business owners. To the contrary, the City seemed to have the interests of the business owners as well as of residents and patrons in the surrounding neighborhoods at heart.
¶ 36. The burden of proof in the case sub judice is the same as was established in Ballard v. Smith. "The one assailing the validity has the burden of proof to establish that the ordinance is invalid or arbitrary or unreasonable as to his property, and this must be by clear and convincing evidence." Ballard v. Smith, 234 Miss. 531, 546, 107 So.2d 580, 586 (1958).
¶ 37. The burden of proving the City acted in an arbitrary and capricious manner must be met by clear and convincing evidence. Walters has not met this burden, nor has Walters raised a valid argument in favor of this Court's reversing the lower court on this matter. Pursuant to our standards of review as stated earlier, we find no abuse of discretion and, thus, we affirm.

CONCLUSION
¶ 38. The amendment described in this appeal was properly granted pursuant to the City of Greenville's written policies and procedures; as such, this Court will not reverse for reasons heretofore mentioned.
¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, AND THOMAS, JJ., CONCUR.